Daren M. Schlecter, Esq. (SBN 259537)
**Law Office of Daren M. Schlecter, A Prof. Corp.**
10866 Wilshire Blvd., Suite 1270
Los Angeles, CA 90024
Telephone (310) 553-5747
Telecopier (310) 553-5487

Attorneys for Plaintiff
Swift Financial, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Armen Davidian,<br><br>                   Debtor<br><br>―――――――――――――――<br><br>Swift Financial, LLC, as servicing agent for WebBank<br><br><br><br>                   Plaintiffs,<br><br>v.<br><br>Armen Davidian, an individual<br><br>                   Defendant. | Case No. 1:25-Bk-11688-MB<br><br>Chapter 7<br><br>Adv No: 1:26-AP-<br><br>**COMPLAINT FOR NON-DISCHARGEABILITY FOR:**<br>**1) Obligation/Money Obtained Through False Pretenses, False Representation or Actual Fraud under 11 U.S.C. § 523(a)(2)(A)**<br>**2) For Misappropriation/Embezzlement Under 11 U.S.C. §523(a)(4)**<br>**3) Willful and Malicious Injury to Property under 11 U.S.C. §523(a)(6) - Misappropriation/Embezzlement** |

**TO THE HONORABLE JUDGE MARTIN BARASH, UNITED STATES BANKRUPTCY**

**JUDGE AND TO ALL INTERESTED PARTIES:**

-1-

## I.  GENERAL ALLEGATIONS

1.      Plaintiff, Swift Financial, LLC ("Plaintiff" or "Swift") is now and was, a business entity organized under the laws of the state of Delaware and authorized to do business in the State of California, County of Los Angeles.  Plaintiff is the loan servicer for WebBank.

2.      Plaintiff is informed and believes and based upon such information and belief alleges that Defendant Armen Davidian (alternatively referred to as "Davidian", "Defendant" or "Debtor"), is now and was, at all times herein mentioned, an individual residing in the County of Los Angeles, State of California.  Defendant Armen Davidian is the Debtor in the above captioned Chapter 7 bankruptcy case, case number 1:25-Bk-11688-MB.

3.      This Court has jurisdiction over this adversary proceeding for non-dischargeability pursuant to 28 U.S.C. §157(b)(2)(I) and 28 U.S.C. §1334.

4.      This Court has jurisdiction over Plaintiff's §523 claims under 28 U.S.C. §§157(b)(2),  (b)(4), & (c)(1) & 1334(a)/ (b) and the determination of non-dischargeability under 11 U.S.C. §523(a)(2)(A), (a)(4) and (a)(6).

5.      Venue properly lies in this judicial district pursuant to 28 U.S.C. §1409(a) in that the instant proceeding is related to the Davidian Bankruptcy under 11 of the United States Code, which is before this Court.

6.      Pursuant to FRBP 7008, Plaintiff consents to the entry of final orders and judgment by the Bankruptcy Court to the maximum extent permitted by applicable law.

7.      This action is brought pursuant to and in reliance on the Stipulation entered into on January 14, 2026 (Doc 28, Order, Doc 32) to extend the deadline to file an action under 11 U.S.C. §523 et seq.  to April 2, 2026.

## II.  FACTUAL ALLEGATIONS

8.      Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 7 inclusive, of Plaintiff's Complaint with the same force and effect as though set forth in full.

9.      On or about March 4, 2019, Defendant Armen Davidian doing business as GS Custom Bar and Furniture ("Davidian") completed a loan application for funding for his

business, citing that he needed funding for, "Cash flow for delayed accounts receivables" (the "GS Custom Bar Application").

10.     On or about March 6, 2019, Defendant individually and on behalf of GS Custom Bar and Furniture ("GS Custom Bar"), entered into a loan agreement with WebBank totaling $50,000.00 ("Loan Agreement").

11.     The Loan Agreement made Defendant personally liable for the amount of the loan upon default.

12.     The Loan Agreement was signed by Defendant on behalf of GS Custom Bar and personally as a guarantor.

13.     The Loan Agreement contained clauses regarding segregating and keeping the loan funds in the business bank account to which the loan funds were disbursed.

14.     Defendant listed only one business bank account on the Loan Agreement with Bank of America, account ending #1868 ("First GS Custom Bar Account").

15.     Under the Loan Agreement, Defendant agreed and understood that weekly payments of $1,088.49 would be automatically made by ACH for 52 weeks following the week the Loan Agreement was entered into between the parties ("Weekly ACH").

16.     Defendant agreed and represented in the Loan Agreement that he would maintain the loan funds in the First GS Custom Bar Account as follows (the "Segregation Clause"):

        a.   He would not permit or cause a diversion of any of the business loan funds out of the First GS Custom Bar Account (Covenants, Section 9(l));

        b.   He would not permit any event to occur that could cause a diversion of any funds from the First GS Custom Bar Account to any other account or entity (Bank Accounts, Section 10);

        c. He would not interfere or impair Plaintiff's ability to withdraw payments from the First GS Custom Bar Account (Events of Default, Section 6 (b)).

17.     Defendant agreed and represented in the Loan Agreement that he had listed all of GS Custom Bar and Furniture's business accounts as follows (the "Bank Account Disclosure"):

        a. That he would not interfere or circumvent payment to Plaintiff, including

making use of any bank accounts other than the bank account(s) he listed on the Loan Agreement (Events of Default, Section 6 (f));

b. that he would maintain and receive all receivables into the Bank Account disclosed on the Loan Agreement (Bank Accounts, Section 10); and

c. that he would list all of the Business's bank accounts (Exhibit "A", Payment Authorization)

18.    By virtue of Section 5(b), Defendant personally affirmed and Plaintiff relied on these representations at the time the loan was made to Defendant.

19.    In reliance on the GS Custom Bar Application, the specific Segregation Clause and Business Disclosure representations made in the Loan Agreement, and review of Defendant's financial affairs in the months before the Loan Agreement, on March 6, 2019, Paypal approved the loan to Defendant and WebBank disbursed $50,000.00 to the First GS Custom Bar Account ("Loan").

20.    The same day that Defendant received the Loan, Defendant incurred another loan in favor of Retail Capital, LLC for $73,710.00 on March 6, 2019 ("First Stacking Loan").

21.    The same day, March 6, 2019, received a banking advance from Bank of America for $34,500.00 ("Second Stacking Loan").

22.    Two days later, on March 8, 2019, Defendant received a $38,204.00 loan from Millennium Trust Company ("Third Stacking Loan").

23.    Before entering into the Loan Agreement, on March 1, 2019, Defendant wrote check 1047 from the First GS Custom Bar Account to himself in the amount of $10,000.00.

24.    Before entering into the Loan Agreement, on March 1, 2019, Defendant wrote check 1048 from the First GS Custom Bar Account to "GS Custom Bar and Furniture" in the amount of $15,000.00.

25.    Check 1048 was deposited into Defendant's Wells Fargo Account ending 4619 titled "Armen Davidian dba G S Custom Bar & Furniture" on March 1, 2019 ("Undisclosed Account").

26.    The Undisclosed Account was not listed on the Loan Agreement.

27.    The Undisclosed Account was actively being used by Defendant to operate the same business - GS Custom Bar & Furniture.

28.    On March 6, 2019 (the same day Defendant received the Loan), Defendant wrote another check 1004 from the First GS Custom Bar Account to GS Custom Bar and Furniture in the amount of $35,000.00.

29.    Check 1004 was also deposited into the Undisclosed Account.

30.    From March 6, 2019 to March 13, 2019 Defendant wrote the following further checks out of the First GS Custom Bar Account, diverting the entirety of Plaintiff's Loan as well as the other loan funds within a week from that account:

| Date | Check # | Payee | Amount |
| --- | --- | --- | --- |
| **3/1/2019** | **1047** | **Armen Davidian** | **$10,000.00** |
| 3/6/2019 | 1002 | Best Custom Design | $24,600.00 |
| 3/6/2019 | 1003 | NB Transportation | $19,170.00 |
| **3/6/2019** | **1004** | **GS Custom Bar & Furniture** | **$35,000.00** |
| 3/6/2019 | 1005 | Atrucking | $9,800.00 |
| **3/6/2019** | **1048** | **GS Custom Bar & Furniture** | **$15,000.00** |
| 3/6/2019 | 1049 | GAG Custom Design | $19,000.00 |
| 3/8/2019 | 1008 | ZA Custom Remodeling | $15,000.00 |
| 3/8/2019 | 1010 | NB Transportation | $10,000.00 |
| 3/8/2019 | 1012 | Fly Venture Corp. | $22,000.00 |
| 3/11/2019 | 1009 | ZA Custom Remodeling | $10,000.00 |
| 3/11/2019 | 1011 | Vavartani Fashion Custom Designer | $16,000.00 |
| 3/11/2019 | 1015 | Best Custom Design | $8,000.00 |
| 3/13/2019 | 1016 | NB Transportation | $10,000.00 |
| 3/13/2019 | 1017 | Star Construction | $23,500.00 |
| *Total Amount Diverted Out of First GS Custom Bar Account:   $247,070.00* | | | |

31.    By March 15, 2019, the First GS Custom Bar Account was depleted to a zero balance.

32.    The balance for the First GS Custom Bar Account in April, 2019 and May, 2019 continued to be zero.

33.    Defendant made no payments on the Loan.

34.    Indeed, Defendant defaulted on the first payment attempted on March 15, 2019, as the First GS Custom Bar Account had all but been depleted within days of the Loan ("First Payment Default").

### III. FIRST CLAIM FOR RELIEF

### TO DETERMINE DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A)

### (Obligation/Money Incurred Through False Pretenses, False Representation, Actual Fraud

### or Deceptive Conduct)

35.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 34 inclusive, of Plaintiff's Complaint with the same force and effect as though set forth in full.

A. Defendant Concealed He Was Already Moving and Diverting Funds to An Undisclosed and Active Bank Account for the Same Business

36.    Defendant agreed and represented in the Loan Agreement that he would maintain the loan funds in the First GS Custom Bar Account as follows (the "Segregation Clause"):

a.    He would not permit or cause a diversion of any of the business loan funds out of the First GS Custom Bar Account (Covenants, Section 9(l));

b.    He would not permit any event to occur that could cause a diversion of any funds from the First GS Custom Bar Account to any other account or entity (Bank Accounts, Section 10);

c. He would not interfere or impair Plaintiff's ability to withdraw payments from the First GS Custom Bar Account (Events of Default, Section 6 (b)).

37.     Defendant agreed and represented in the Loan Agreement that he had listed all of GS Custom Bar and Furniture's business accounts (the "Bank Account Disclosure"):

    a.  That he would not interfere or circumvent payment to Plaintiff, including making use of any bank accounts other than the bank account(s) he listed on the Loan Agreement (Events of Default, Section 6 (f));

    b. maintain and receive all receivables into the Bank Account disclosed on the Loan Agreement (Bank Accounts, Section 10); and

    c. list all of the Business's bank accounts (Exhibit "A", Payment Authorization)

38.     By virtue of Section 5(b), Defendant personally affirmed and Plaintiff relied on these representations at the time the loan was made to Defendant.

39.     At the time Defendant made the representations regarding the Segregation Clause and the Bank Account Disclosure in the Loan Agreement, he knew them to be false because:

    a)  he was already shifting money out of the First GS Custom Bar Account in the days leading up to the Loan to the Undisclosed Account;

    b) He been actively using the Undisclosed Account to operate GS Custom Bar and Furniture since at least September, 2018; and

    c) He amassed a total of $158,210 across four loans within 48 hours ("Stacking").

40.     Furthermore, by the time of the Loan, Defendant was in the process of a systemic depletion of the First GS Custom Bar Account, wherein he wrote $122,570 in checks on March 6, 2019, $38,000.00 in checks on March 8, 2019, $34,000.00 in checks on March 11, 2019, and $33,500.00 on March 13, 2019, all but leaving the account balance entirely depleted by March 15, 2019 and *exactly* at zero.

41.     Defendant intended to deceive Plaintiff as he was took the Loan funds knowing that he had a previously undisclosed and unreachable bank account to operate the same business.

42.     Plaintiff justifiable relied on the Defendant's specific Segregation Clause representation in entering into the Loan Agreement in conjunction with the Loan Application and review of Defendant's financial affairs.

43. Specifically, Defendant began diverting funds to himself and the Undisclosed Account only in the days leading up to the Loan Agreement.

44. Furthermore, Defendant emptied the First GS Custom Bar Account of all funds within days of the Loan.

45. Plaintiff also justifiable relied on the Defendant's specific Bank Account Disclosure representation in entering into the Loan Agreement in conjunction with the Loan Application and review of Defendant's financial affairs.

46. Defendant was actively using the Undisclosed Account to operate the same business since September, 2018.

47. Plaintiff only discovered the foregoing following the Defendant's bankruptcy filing that Defendant had diverted, funneled, commingled, and converted funds to Defendant's separate undisclosed bank account and written suspicious checks for large amounts to a variety of entities.

48. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered losses in excess of $87,677.08.

49. Defendant/Debtor's conduct violates 11 U.S.C. §523(a)(2)(A) and, therefore, Debtor's indebtedness to Plaintiff constitutes a non-dischargeable debt.

B. Defendant Knew He Would be Unable to Make the First Payment under the Loan, Which Caused the First Payment Default

50. At the time Defendant entered into the Loan Agreement, Defendant was shifting monies to himself, the Undisclosed Account, and suspiciously to third parties, resulting in their being no money to make the first payment due under the Loan Agreement on March 15, 2019.

51. In fact, by March 15, 2019, the balance in the First GS Custom Bar Account was zero and continued to be zero in the months that followed.

52. Defendant's incurring of other debt at the same time, shifting of the entirety of the cash flow out of the First GS Custom Bar Account, and use and failure to disclose another active business account capable of repaying the Loan all evidence intent to defraud and Defendant's

knowledge that he would be unable to pay on the date he received the loan funds.

53. Plaintiff did not discover these truths until after the bankruptcy filing.

54. Plaintiff justifiably relied on its review of Defendant's financial affairs in the months before the Loan and the GS Custom Bar Application in determining ability to repay the Loan.

55. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered losses in excess of $57,985.40.

56. Defendant/Debtor's conduct violates 11 U.S.C. §523(a)(2)(A) and, therefore, Debtor's indebtedness to Plaintiff constitutes a non-dischargeable debt.

C. Defendant Concealed the Undisclosed Account

57. At the time of the GS Custom Bar Application and the Loan Agreement, Defendant had opened and was using the Undisclosed Account to operate his business.

58. The Loan Agreement required that Defendant list and represent all active business accounts open at the time of the Loan Agreement on March 6, 2019.

59. Defendant listed only one business bank account on the Loan Agreement with Bank of America, account ending #1868 (the "First GS Custom Bar Account").

60. Defendant knew about and concealed the Undisclosed Account, to which he diverted funds into in early March, 2019.

61. Plaintiff did not discover the existence of the Undisclosed Account until its investigation in connection with Debtor's bankruptcy filing.

62. Plaintiff justifiably relied on its review of Defendant's financial affairs and the GS Custom Bar Application to get a complete financial picture, including all bank accounts existing at the time of the Loan to secure repayment.

63. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered losses in excess of $57,985.40.

64. Defendant/Debtor's conduct violates 11 U.S.C. §523(a)(2)(A) and, therefore, Debtor's indebtedness to Plaintiff constitutes a non-dischargeable debt.

## IV. SECOND CLAIM FOR RELIEF

### TO DETERMINE DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(4)

### (Debts Incurred through Embezzlement/Misappropriation under 11 U.S.C. §523(a)(4)

65.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 64 inclusive, of Plaintiff's Complaint with the same force and effect as though set forth in full.

66.     Plaintiff disbursed $50,000.00 in loan proceeds to Defendant under the Loan Agreement.

67.     The loan funds were entrusted to Defendant under the Segregation Clause and pursuant to the Loan Agreement.

68.     Defendant diverted both the Loan and all funds from the First GS Custom Bar Account to the Undisclosed Account and third parties, leaving the First GS Custom Bar balance at zero.

69.     The diversion of funds and cash flow was part of a willful, premeditated exit strategy to stack debt and leave Plaintiff and other lenders without recourse.

70.     Thus, Defendant intentionally permitted and orchestrated a diversion of the business loan funds out of the First GS Custom Bar Account (Covenants, Section 9(l)), resulting in the First Payment Default.

71.     Defendant intentionally permitted and orchestrated the diversion of funds from the First GS Custom Bar Account to the Undisclosed Account and various third parties, resulting in the First Payment Default.

72.     Defendant intentionally interfered and impaired Plaintiff's ability to withdraw payments from the First GS Custom Bar Account by diverting all money from that account, which caused the First Payment Default.

73.     The aforementioned acts and the other acts alleged here constitute embezzlement/misappropriation sufficient to establish a non-dischargeable debt under 11 U.S.C. §523(a)(4).

74.     The Defendant/Debtor's conduct violates 11 U.S.C. §523(a)(4) and, therefore, the Debtor's indebtedness to Plaintiff constitutes a non-dischargeable debt.

75. As a direct and proximate result of the Debtor's actions, Plaintiff has suffered losses in excess of $57,985.40.

## V.   THIRD CLAIM FOR RELIEF

## TO DETERMINE DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(6)

## (Willful and Malicious Injury to Property under 11 U.S.C. §523(a)(6) -

## Misappropriation/Embezzlement)

76. Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 75 inclusive, of Plaintiff's Complaint with the same force and effect as though set forth in full.

77. Plaintiff disbursed $50,000.00 in loan proceeds to Defendant under the Loan Agreement.

78. The loan funds were given to Defendant under conditions set forth in the Segregation Clause and the Bank Account Disclosure under the Loan Agreement.

79. Defendant diverted both the Loan and all funds from the First GS Custom Bar Account to the Undisclosed Account and third parties, leaving the First GS Custom Bar balance at zero.

80. The diversion of funds and cash flow was part of a willful, premeditated exit strategy to stack debt and leave Plaintiff and other lenders without recourse.

81. Thus, Defendant intentionally permitted and orchestrated a diversion of the business loan funds out of the First GS Custom Bar Account (Covenants, Section 9(l)), resulting in the First Payment Default.

82. Defendant intentionally permitted and orchestrated the diversion of funds from the First GS Custom Bar Account to the Undisclosed Account and various third parties, resulting in the First Payment Default.

83. Defendant intentionally interfered and impaired Plaintiff's ability to withdraw payments from the First GS Custom Bar Account by diverting all money from that account, which caused the First Payment Default.

84.     Defendant willfully concealed the Undisclosed Account from Plaintiff, which he actively used to operate GS Custom Bar and Furniture before, during and after the Loan.

85.     The Undisclosed Account was opened on September 18, 2018 and closed on May 31, 2019, shortly after the Loan.

86.     The Defendant/Debtor's conduct violates 11 U.S.C. §523(a)(6) as the embezzlement/misappropriation was both willful and malicious and, therefore, the Debtor's indebtedness to Plaintiff constitutes a non-dischargeable debt.

87.     As a direct and proximate result of the Debtor's actions, Plaintiff has suffered losses in excess of $57,985.40.

WHEREFORE, Plaintiff prays that the Court:

1) Determine the amount owed to Plaintiff in an amount not less than $57,985.40 on Plaintiff's 11 U.S.C. §523(a)(2)(A), (a)(4) and (a)(6) claims;

2) That the Court determine that Defendant's debts to Plaintiffs are nondischargeable under 11 U.S.C. §523(a)(2)(A), (a)(4), and/or (a)(6);

3)  For costs of suit incurred herein, including, without limitation, attorneys' fees consistent with Fed. R. Bank. Proc. 7054 and California *Code of Civil Procedure* §§1032, 1033 as authorized by contract/statute;

4) For Pre-judgment and post-judgment interest pursuant to 28 U.S.C. §1961;

5) That Plaintiff have such other and further relief as the Court deems appropriate..

Dated: March 25, 2026                      Respectfully submitted,

LAW OFFICE OF DAREN M. SCHLECTER

/s/ Daren M. Schlecter

By: _____
Daren M. Schlecter, Esq.,
Attorney for Plaintiff Swift Financial,
LLC

-12-